UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DIANA C. GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 3:25-CV-837 JD |

**OPINION AND ORDER**

Plaintiff Diana Gonzalez applied for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning in September 2015. Her claims were rejected, leading to a review by an Administrative Law Judge ("ALJ") who concluded that Plaintiff was not disabled. The Appeals Council denied her request for review, and Plaintiff now seeks judicial review. For the reasons below, the Court will affirm the Agency's decision.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. The ALJ's Decision**

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "diabetes mellitus with retinopathy, polyneuropathy, and chronic kidney disease, status post surgeries; right eye ocular hypertension, and glaucoma." (ALJ's Decision, R. at 59.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*)

The ALJ concluded that Plaintiff has the RFC to perform

> a full range of work at all exertional levels but with the following non-exertional limitations: The claimant cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. She cannot perform work that requires bilateral depth perception but retains the ability to manipulate and handle large objects but cannot manipulate small objects or tasks such as threading a needle or repairing a watch. She has sufficient vision to avoid ordinary hazards in the workplace such as approaching people and vehicles, boxes on the floor, open doors, and open file drawers, but cannot ascertain hazards that would be generally seen using the left peripheral vision alone, although she can turn her body to ascertain hazards. The claimant cannot work around sharp unprotected implements, unprotected heights, heavy machinery, dangerous machinery, or unprotected moving mechanical machinery. She cannot perform any occupational driving. The claimant is limited to reading print that is greater than 10 points. She cannot perform work that requires reading as an integral component of the job task functions.

(ALJ's Decision, R. at 61.)

Ultimately, the ALJ concluded that, considering Plaintiff's "age, education, work experience, and residual functional capacity, [she] was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, R. at 75.) As a result, the ALJ found Plaintiff to be not disabled.

**D. Discussion**

In her appeal, Plaintiff argues that the vocational expert's ("VE") testimony about the jobs available in the national economy that the hypothetical person with Plaintiff's RFC can perform conflicts with the description of those jobs in the Dictionary of Occupational Titles ("DOT"). Plaintiff insists that the restriction against handling small objects flies in the face of the "frequent handling" requirement for the jobs identified by the VE. Likewise, Plaintiff submits that the limitations to reading print that is greater than 10 points and against work that requires reading as an integral component of the job functions contradict the acuity requirements in the DOT. Plaintiff claims that the ALJ erred by relying on the VE's testimony to determine that she was not disabled without first obtaining a reasonable explanation for those purported conflicts. In response, the Commissioner contends that Plaintiff has not shown that any conflict between the VE's testimony or written response was so obvious that the ALJ should have discovered it without any assistance.

At step five, the agency bears the burden of establishing that a significant number of jobs exists in the national economy that Plaintiff can perform. *See Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018) (citing 20 C.F.R. § 416.960(c)(2)). The ALJ's conclusion must be supported by substantial evidence. *Id*. at 967 ("On appeal we ask whether substantial evidence supported the ALJ's conclusion that there are significant numbers of jobs in the economy suitable for [the plaintiff] to perform."). "In making disability determinations, [the agency] rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." SSR 00-4P (S.S.A. Dec. 4, 2000), 2000 WL 1898704, at *2. "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE

or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. "If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." *Id.* "Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." *Id.*, at *2. If a claimant fails to object to conflicts between the VE's testimony and the DOT at the time of the hearing, the claimant must show on appeal that the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (noting that "SSR 00–4p requires only that the ALJ investigate and resolve apparent conflicts between the VE's evidence and the DOT").

* * * * *

At the hearing,[1] the ALJ posed questions to the vocational expert ("VE") about jobs available to a hypothetical individual with Plaintiff's RFC. According to the RFC, Plaintiff can do a full range of work at all exertional levels, but with certain non exertional limitations. Among those limitations is the inability to "perform work that requires bilateral depth perception." (ALJ's Decision, R. at 61.) Further, although Plaintiff can "manipulate and handle[2] large objects," she "cannot manipulate small objects or [perform] tasks such as threading a needle or repairing a watch." (*Id.*) Among other things, she is also "limited to reading print that

[1] There were two hearings: on October 19, 2023, and April 3, 2024. (R. at 106, 87.) The VE at the first hearing was Kathy Taylor, and the VE at the second hearing was Robert Verkins. (R. at 106, 87.) Unless otherwise specified, all references to "the hearing" are to the second hearing.

[2] Handling means "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." SSR 85-15(2)(c) (S.S.A. 1985).

is greater than 10 points." (*Id.*) In response, the VE testified that the hypothetical person with Plaintiff's RFC could perform the following jobs in the national economy:

- laundry laborer, DOT# 361.687-018;
- stores laborer, DOT# 922.687-058; and
- hand packager, DOT# 920.587-018.

(R. at 100–01.)

After the hearing, the ALJ tendered interrogatories to the VE. (R. at 432.) The ALJ explained that she had discovered conflicts between the VE's testimony and the DOT, namely, that the job of hand packager required occasional depth perception and the job of stores laborer required frequent depth perception and occasional climbing of ladders, ropes, and scaffolds. (R. at 433.) The ALJ asked if the VE still believed that the hypothetical individual could perform these jobs. The VE responded in writing that the hypothetical individual could not perform these jobs. (R. at 433.) The VE, however, identified other jobs that the hypothetical individual with Plaintiff's RFC could perform:

- laundry laborer, DOT# 361.687-018;
- dry cleaner helper, DOT# 362.686-010;
- dining room attendant, DOT# 311.677-018;
- machine feeder, DOT# 699.686-010; and
- screen-printing machine operator helper, DOT# 652.686-038.

(R. at 434.)

The VE further responded that there were no conflicts between the occupational evidence he provided and the occupational information contained in the DOT or the SCO. (R. at 435.)

Plaintiff's counsel did not object to, or otherwise challenge, the VE's testimony either at the hearing or after the VE submitted his written responses.

In her decision, the ALJ determined that the VE's testimony is consistent with the DOT. Relying on the VE's testimony and his responses to the interrogatories, the ALJ found that the hypothetical person with Plaintiff's RFC would be able to work as:

- laundry laborer (30,000 jobs nationally);
- dry cleaner helper (70,000 jobs nationally);
- dining room attendant (60,000 jobs nationally);
- and screen printing machine operator helper (12,000 jobs nationally).

Plaintiff now—for the first time—asserts that the VE's testimony and written response to the ALJ's interrogatories conflict with the requirements for all four positions as reflected in the DOT. Generally, the lack of objection would forfeit the issue on appeal. But since "SSR 00–4p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts, a claimant's failure to raise a possible violation of SSR 00–4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). Still, the failure of Plaintiff's counsel to identify the conflicts when the VE testified or answered the interrogatories "is not without consequence." *Id.* "[Plaintiff] now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve apparent conflicts between the VE's evidence and the DOT." *Id.* (citing SSR 00–4p).

Before addressing whether obvious conflicts exist, the Court notes a clear error that Plaintiff identified in her brief, but which the Commissioner is ignoring in his response. At the first hearing, the VE initially testified that the hypothetical individual with Plaintiff's RFC could

work as a dining room attendant. However, the VE retracted her testimony after being told that the RFC assessment restricts the hypothetical individual from working around sharp, unprotected implements.[3] (R. at 131–32.) Yet despite the first VE retracting the position of the dining room attendant, and despite any testimony from the VE at the second hearing about this position, the ALJ determined that Plaintiff could perform the work of a dining room attendant. Without substantial evidence supporting such a conclusion, the ALJ committed an error. *See Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004) ("We review the Commissioner of Social Security Administration's decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law."). But the error is harmless because, even if the dining room attendant job is eliminated, a significant number of jobs remain in the national economy that Plaintiff can perform (at least 70,000 and as many as 112,000), as discussed below. *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008) (when other jobs exist in significant numbers an ALJ's error at step five is harmless).

Turning to the issue of conflicts, Plaintiff notes that, according to the DOT, each remaining position requires frequent handling.[4] Yet the VE testified that the hypothetical individual with her RFC could perform these jobs, despite the RFC assessment that she cannot handle small objects or perform tasks such as threading a needle or repairing a watch.[5] Plaintiff

---

[3] At the second hearing, the VE did not identify a dining room attendant position as representative of a job that the hypothetical individual could perform. The VE, however, did identify a position of a kitchen helper, but retracted it upon being asked by the ALJ whether such position was feasible given possible exposure to sharp kitchen tools. (R. 100–01.)

[4] Laundry laborer, dry cleaner helper, and screen printing machine operator helper positions require frequent handling, that is, "from 1/3 to 2/3 of the time." *See* DICOT 361.687-018 Laundry Laborer, 1991 WL 672992; DICOT 362.686-010 Dry-Cleaner Helper, 1991 WL 673006; and DICOT 652.686-038 Screen-Printing-Machine-Operator Helper, 1991 WL 685776.

[5] The RFC states that Plaintiff "retains the ability to manipulate and handle large objects but cannot manipulate small objects." Although the ALJ refers to manipulation and handling of large objects but only manipulation of small objects, the Commissioners seems to concede that manipulation of small objects is equivalent

submits that these are obvious conflicts that the ALJ should have resolved even without the objection from Plaintiff.

The Court disagrees. It is not obvious that, had the ALJ checked the DOT, she would have recognized that it had conflicting information with the VE's testimony. While the DOT indicates that each of the tree jobs requires frequent handling, it does not specify the size of the objects to be handled. In her opening brief, Plaintiff merely assumes that, if there's a provision for frequent handling, it must include the handling of small objects. Plaintiff cites no authority for this proposition, even though it is her burden to prove the existence of an obvious conflict. As the Commissioner correctly points out, the absence of information in the DOT does not by itself create a conflict between the VE's testimony and the DOT. *Tina S. v. Kijakazi*, No. 3:21-CV-50167, 2022 WL 3700837, at *4 (N.D. Ill. Aug. 26, 2022) ("The absence of information in the DOT does not in and of itself create a conflict with the DOT.") (citing SSR 00-4p, 2000 WL 1898704, at *4). This principle is exemplified in *Ketelboeter v. Astrue*, 550 F.3d 620 (7th Cir. 2008).

In that case, the ALJ erroneously failed to ask the VE whether his testimony that the plaintiff could perform a job of price marker conflicted with the DOT. *Id*. at 625. The court of appeals, however, found that the error was harmless as there was no conflict between the DOT's description of "price marker," which requires "frequent reaching," *see* DICOT 209.587-034 Marker, 1991 WL 671802, and the claimant's overhead-reaching restriction. *Ketelboeter*, 550 F.3d at 626. Similar to *Ketelboeter*, the DOT requirement for frequent handling and a restriction in the RFC against handling small objects are not in obvious conflict with each other. *Cf. Delarosa v. Saul*, No. 18-cv-1027, 2019 WL 2912762, at *2 (W.D. Wis. July 8, 2019) (where the

---

to handling them. (*See* Def.'s Resp., DE at 7 ("Here, the ALJ restricted Plaintiff to no work that required bilateral depth perception, but with the ability to manipulate and handle large objects just not small objects . . ..").)

ALJ identified jobs that require frequent reaching, there was no conflict with the plaintiff's claim that she cannot reach overhead "[b]ecause the DOT does not specify which type of reaching is required").

In her reply brief, Plaintiff attempts, for the first time, to read small objects into the task element statements, but that attempt is based on assumptions, not the actual descriptions of the jobs. "Arguments raised for the first time in an appellate reply brief are waived," *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 843 (7th Cir. 2018), but the Court will address Plaintiff's argument for completeness. Plaintiff states that

> these jobs include tasks that plainly require small-object manipulation. A laundry laborer, for example, "sorts" items and "folds" linens, which are tasks that routinely involve manipulating buttons, tags, seams, and other small components. DICOT 361.687-018. A screen-printing machine operator helper "cleans screens" and "inserts materials", which are tasks requiring fine manipulation. DICOT 652.686-038. The conflict between Plaintiff's inability to manipulate small objects and the frequent handling required by these jobs is obvious on its face.

(Pl.'s Reply Br., DE 15 at 4.)

The problem with Plaintiff's assertions of "obviousness" is that the job descriptions say nothing about folding linens, manipulating buttons, tags, or seams, or cleaning screens and inserting materials. *See* DICOT 361.687-018 Laundry Laborer, 1991 WL 672992; DICOT 652.686-038 Screen-Printing-Machine-Operator Helper, 1991 WL 685776. That is to say, Plaintiff cites job functions that are not supported by the DOT. What's more, even assuming that the screen printing machine operator helper job requires cleaning screens or inserting materials, it is not obvious that those tasks involve handling small objects, as the size of these components is not specified. Moreover, although the laundry laborer position does entail "sorting," that task relates to "net bags containing clean wash according to customers' identification tags" and "empty bags according to color and size." DICOT 361.687-018 Laundry Laborer 361.687-018,

1991 WL 672992. Plaintiff's assumption that such sorting involves small objects is speculative. Further, to the extent that the RFC refers to threading a needle and repairing a watch, it is suggestive of much smaller objects than the ones listed in the job descriptions. The conflict, if any, must relate to the DOT specifications for the jobs, not to speculation about what those jobs may or should entail. *See Brooks v. Colvin*, No. 2:12-CV-206-JEM, 2014 WL 1319442, at *17 (N.D. Ind. Mar. 27, 2014) ("While it may be true that the DOT's description of [the listed] jobs [is] inaccurate or incomplete, nothing in the regulations or Ruling 00–4p requires that an ALJ correct the DOT.") Simply put, although there is no question that the jobs identified by the VE and accepted by the ALJ require frequent handling, Plaintiff has failed to demonstrate that the DOT job descriptions imply, let alone make obvious, that any of the frequently handled objects are small.

Notably, Plaintiff does not address the task element statement of the dry cleaner helper position, presumably conceding that it involves no handling of small objects. Yet, as the VE estimated, that position alone represents 70,000 jobs country-wide, a significant number in the national economy. *See Collins v. Berryhill*, 743 F. App'x 21, 25–26 (7th Cir. 2018) (finding that 55,000 jobs is a significant number in the national economy). While Plaintiff agrees that she has the burden to establish that the conflicts related to handling were obvious enough to be recognized by the ALJ (*see* Pl.'s Reply Br., DE 15 at 3 ("The apparent-conflict doctrine simply shifts the burden back to the claimant to identify the conflict on appeal . . . .")), she has fallen short of that burden.

Plaintiff's second contention is that the vision restrictions in the ALJ's RFC assessment and corresponding hypothetical question were in obvious conflict with DOT's requirements for

depth perception and acuity. Once again, the Court respectfully disagrees. According to the RFC, Plaintiff

> cannot perform work that requires bilateral depth perception . . . . She has sufficient vision to avoid ordinary hazards in the workplace such as approaching people and vehicles, boxes on the floor, open doors, and open file drawers, but cannot ascertain hazards that would be generally seen using the left peripheral vision alone, although she can turn her body to ascertain hazards. . . . [Plaintiff] is limited to reading print that is greater than 10 points. She cannot perform work that requires reading as an integral component of the job task functions.

(ALJ's Decision, R. at 61.)

Beginning with depth perception, Plaintiff reasons that, because the VE initially testified that the hypothetical individual could work as a hand packager but later rescinded that opinion because the job requires occasional depth perception, the jobs ultimately accepted by the VE must also be rejected. The Court fails to understand the logic of this proposition. After all, the DOT has no depth-perception requirement for the positions of laundry laborer, dry cleaner helper, and screen print machine operator helper. *See* DICOT 361.687-018 Laundry Laborer, 1991 WL 672992; DICOT 362.686-010 Dry-Cleaner Helper, 1991 WL 673006; DICOT 652.686-038 Screen-Printing-Machine-Operator Helper, 1991 WL 685776. And insofar as Plaintiff likens her peripheral vision and reading limitations to depth perception, she has provided no authority to support such a comparison.[6] In short, there's no conflict regarding depth perception, let alone one that is obvious enough for the ALJ to recognize on her own.

Plaintiff's argument regarding acuity fares no better. The position of the dry cleaner helper has no acuity requirement, so the limitations on Plaintiff's ability to read create no conflict

---

[6] "Depth perception is [one's] ability to see objects in three dimensions, including their size and how far away they are from you." Depth Perception, https://my.clevelandclinic.org/health/body/24956-depth-perception (last visited August 20, 2026). On the other hand, "[p]eripheral vision refers to what [one] can see to each side or up and down without moving [one's] head, or everything that [one] can see that isn't in [one's] central vision. [One's] central vision is what [one] see[s] that's directly in front of [her]. Peripheral Vision, https://my.clevelandclinic.org/health/articles/25039-peripheral-vision (last visited August 20, 2026).

that was obvious enough to put the ALJ on notice. Hence, the dry cleaner helper position remains undisturbed, and as noted already, it accounts for 70,000 jobs nationally. Next, although the jobs of laundry laborer and screen printing machine operator helper require occasional near acuity—defined as "clarity of vision at 20 inches or less," Program Operations Manual System (POMS): DI 25001.001—neither the ALJ's RFC assessment nor the hypothetical questions are in obvious conflict with the DOT. That is because near acuity requires clarity of vision at 20 inches or less, but it does not dictate the size of the text to be read or impose a substantial reading requirement. In other words, the restriction in the RFC to text greater than 10 points and prohibition against substantial reading do not in and of themselves give rise to an obvious conflict. Finally, although Plaintiff argues that the VE's "own testimony indicates that he understood the reading limitations to correspond to DOT acuity categories" (Pl.'s Reply Br., DE 15 at 5), that's not the same as saying that there were conflicts obvious enough that the ALJ should have picked up on them without any assistance. As with the issue of handling, Plaintiff has failed to meet her burden of showing a conflict.

**E. Conclusion**

For these reasons, the Court AFFIRMS the Agency's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 24, 2026

/s/ JON E. DEGUILIO
Judge
United States District Court